IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| MEINEKE CAR CARE CENTERS, INC., ) | CIVIL ACTION NO. |
| ) | 3:06CV87-MU |
| Plaintiff, ) | |
| ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| ELIO M. QUINONES (a.k.a. ELIO M. ) | |
| QUIÑONES) and ) | |
| ELIO M. QUINONES, JR. (a.k.a. ELIO M. ) | |
| QUIÑONES, JR.), ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on Plaintiff's Amended Motion for a Preliminary Injunction and Memorandum in Support, both filed March 2, 2006. Defendants filed a letter response on March 30, 2006. On May 30, 2006, the Court held a hearing on this matter at which time Plaintiff submitted three additional affidavits, updating the Court on the status of Defendants' activities with regard to Plaintiff's claims for trademark infringement and violation of the non-compete covenant. Defendants did not attend the hearing. This matter is now ripe for decision by the Court.

## I. FACTUAL AND PROCEDURAL HISTORY

On or about November 24, 1999, Defendants became Meineke franchisees by executing a Meineke Franchise and Trademark Agreement ("Franchise Agreement") for Shop No. 1401 ("Shop No. 1401"), which is located at Road #174, KM 2.2, Parque Industrial Minillas, Bayamon, Puerto Rico 00959. (Amended Verified Complaint ¶ 20.) Defendants also executed an Advertising Addendum, which modified portions of Article 3 of their Franchise Agreement. (Amended Verified Complaint ¶ 21.) By signing the Franchise Agreement, Defendants acquired the right to use the Meineke name and marks and received

from Meineke proprietary information and know-how. (Amended Verified Complaint ¶ 22.) In exchange, Defendants agreed to: (i) pay Meineke on a weekly basis a franchise fee, or royalty, in an amount equal to seven percent (7%) of the shop's gross revenues derived from the sale or service of exhaust systems and five percent (5%) of the shop's gross revenues derived from all other sales or services; (ii) pay Meineke on a weekly basis an advertising contribution in an amount equal to one point five percent (1.5%) of the shop's gross revenues; and (iii) furnish Meineke with accurate weekly business reports of the shop's gross revenues. (Amended Verified Complaint ¶ 23.)

Additionally, by signing the Franchise Agreement, Defendants agreed that for a period of one (1) year after leaving Meineke, they would not directly or indirectly (such as through corporations or other entities owned or controlled by Defendants) own a legal or beneficial interest in, manage, operate or consult with: (a) any business operating at the premises of Shop No. 1401 or within a radius of six (6) miles of the premises of Shop No. 1401 which business repairs or replaces exhaust system components, brake system components, or shocks and struts; and (b) any business operating within a radius of six (6) miles of any Meineke Shop existing as of the date Defendants' Franchise Agreement terminated which business repairs or replaces exhaust system components, brake system components, or shocks and struts. (Amended Verified Complaint ¶ 33.)

During the term of the Franchise Agreement, Defendants breached the contract by failing to submit to Meineke accurate weekly business reports of the shop's gross revenues, and by failing to pay Meineke all of the franchise fees and advertising contributions incurred by them during the term of the Franchise Agreement. (Amended Verified Complaint ¶ 24.) Consequently, on September 13, 2004, Meineke sent Defendants a Notice of Default,

informing them that they were in default of the Franchise Agreement because they had failed to pay all of their weekly franchise fees and advertising contributions and that their franchise license could be terminated if they failed to timely cure their defaults. (Amended Verified Complaint ¶ 25.)  Despite this notice, Defendants failed to timely cure their defaults. (Amended Verified Complaint ¶ 26.)  However, Defendants met with Meineke management and agreed to make future payments to Meineke while they looked for a buyer to take over their Shop. (Amended Verified Complaint ¶ 26.)  Defendants failed to make payments as they had agreed, so on March 15, 2005, Meineke sent Defendants a Notice of Termination. (Amended Verified Complaint ¶ 27.)

After Defendants received the Notice of Termination, they contacted Meineke to discuss the situation.  Meineke management agreed, once again, that if Defendants remained current in their weekly payments of franchise fees and advertising contributions, Meineke would temporarily reinstate Defendants' license so that they could operate the business while they looked for a buyer who would continue to operate Shop No. 1401 as a Meineke. (Amended Verified Complaint ¶ 28.)  Defendants sent in their payments for a while. (Amended Verified Complaint ¶ 29.)  However, Defendants eventually stopped sending in payments. (Amended Verified Complaint ¶ 29.)  Accordingly, Meineke sent Defendants a Notice of Termination on July 19, 2005, terminating their license to operate Shop No. 1401 effective July 22, 2005. (Amended Verified Complaint ¶ 29.)

At the time of their termination, Defendants owed $12,270.77 in past due franchise fees, advertising contributions and merchandise indebtedness. (Amended Verified Complaint ¶ 30.)  Defendants sporadically sent payments to Meineke after their termination as authorized Meineke franchisees. (Amended Verified Complaint ¶ 30.)  As of the date of the

hearing in this matter, Defendants still owe $7,622.41 in outstanding franchise fees and advertising contributions that were due at the time of their termination. (Affidavit of Kimberly Parker ¶ 8.)

The Notice of Termination demanded that Defendants comply with the post-termination covenants in the Franchise Agreement, which included: (1) discontinuing the use of the Meineke Marks; and (2) ceasing to offer brake, exhaust and shocks and struts services within six miles of Shop No. 1401 or any other Meineke shop for a period of one year from the date of termination. (Amended Verified Complaint at Ex. 3.)

Despite termination of their license, Defendants continue to operate a competing automotive repair business located at the same address as their former Meineke Shop No. 1401. (Amended Verified Complaint ¶ 37; Parker Aff. ¶¶ 4, 6.) Moreover, Defendants have failed to remove or cease using all materials featuring the Meineke name and logo, including the yellow awning located at former Shop No. 1401. (Parker Aff. ¶ 5.) Defendants also have failed to pay a past due balance of $3,932.73 to the Puerto Rican telephone company, which means that Meineke cannot gain control of the telephone number that has been advertised extensively with Meineke's name and marks in Yellow Pages advertising. (Affidavit of Jacob Lindgren ¶ 4; Amended Verified Complaint ¶ 35.) Consequently, Meineke asks the Court to enter a Preliminary Injunction, enjoining Defendants from continuing to infringe Meineke's trademarks and from continuing to breach the Franchise Agreement, including the non-compete covenant.

## II.  DISCUSSION

The "balance of hardships" test is used to determine the propriety of preliminary injunctive relief. *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 196 (4th Cir. 1977). This test weighs the following four factors: (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if the requested relief is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest. *Id.* at 193. The plaintiff bears the burden of establishing that each of the four elements supports granting the injunction. *Direx Israel, Ltd. v. Breakthrough Medical Corp.,* 952 F.2d 802, 812 (4th Cir. 1992).

A.      **Irreparable Harm to Meineke in the Absence of a Preliminary Injunction**

The question of irreparable harm to the plaintiff is the first factor to be considered in a motion for preliminary injunction. *Direx*, 952 F.2d at 812. If a plaintiff cannot establish that irreparable harm is likely to occur in the absence of a preliminary injunction, that failure alone is sufficient to deny injunctive relief. *Manning v. Hunt*, 119 F.3d 254, 266 (4th Cir. 1997). "Moreover, the required 'irreparable harm' must be 'neither remote nor speculative, but actual and imminent.'" *Direx*, 952 F.2d at 812 (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2nd Cir. 1989)). However, as the balance tips in favor of finding irreparable harm to the plaintiff, there is a lesser need for the plaintiff to establish likelihood of success on the merits. *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991).

In the instant case, Meineke has established that it will suffer irreparable harm if the Court does not enter the requested preliminary injunction. With regard to Defendants' continuing infringement of Meineke's trademarks, if Defendants continue their unauthorized use of the Meineke name and marks, consumers may be deceived into believing Defendants are operating a legitimate Meineke business. Consequently, any defective work performed by Defendants could result in customer complaints to Meineke and Meineke and its franchisees will suffer irreparable harm in the form of the loss of customers and the corresponding loss of sales. *See Duct-O-Wire Co. v. U.S. Crane, Inc.*, 31 F.3d 506, 509-10 (7th Cir. 1994) (stating that the "irreparable harm is that [franchisor] will lose sales and the opportunity to maintain and develop relationships with existing and potential customers").

Moreover, allowing Defendants to operate a competing business in violation of the covenant not to compete allows Defendants to compete unfairly with Meineke and causes

irreparable harm. Such competition may deprive Meineke of the customers and market it has established over the course of the franchise relationship with Defendants and would make it difficult for Meineke to re-establish an authorized Meineke franchise in the area. Additionally, allowing Defendants to ignore the Franchise Agreement gives them an unfair competitive advantage over legitimate Meineke franchisees in the area because they are able to offer their services for a lower price than the franchisees since they do not have to pay Meineke's royalty or advertising contributions.

In sum, if the Court does not enter a preliminary injunction, Defendants' infringement on Meineke's trademarks and their breach of the covenant not to compete will result in irreparable harm to Meineke.

**B.  Likelihood of Harm to Defendants if Preliminary Injunction is Granted**

The Court finds that if Defendants are permitted to continue to infringe on Meineke's trademarks and violate the covenant not to compete, the harm to Meineke certainly outweighs any harm to Defendants. In fact, any harm that Defendants may suffer would be a result of their own conduct in failing to pay their royalty fees and advertising contributions. Such harm does not justify allowing Defendants to continue infringing on Meineke's trademarks or violating the covenant not to compete. *See S&R Corp. v. Jiffy Lube International, Inc.*, 968 F.2d 371, 379 (3rd Cir. 1992) (noting that "self-inflicted harm is far outweighed by the immeasurable damage done [to the franchisor] by the infringement of its trademark"). Therefore, the likelihood of harm to Meineke if the injunction is not granted significantly outweighs any possible harm to Defendants resulting from the imposition of the injunction.

**C.  Meineke's Likelihood of Success on the Merits of its Claims**

Since the Court finds that Meineke would suffer irreparable harm in the absence of a

preliminary injunction, the Court will not discuss in detail whether Meineke has a likelihood of success on the merits of its claims. The Court notes, however, that Meineke has established a *prima facie* case for both its trademark infringement claim and the covenant not to compete claim. At this juncture, Defendants have not provided any contrary evidence.

**D.     Public Interest**

The Court further finds that the public interest is served by the issuance of the requested injunction.

In conclusion, the Court finds that the entry of a preliminary injunction is necessary to protect Meineke from irreparable harm. Such harm to Meineke significantly outweighs any harm that Defendants may incur as a result of the entry of the injunction.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Preliminary Injunction is hereby **GRANTED**. Defendants are hereby ordered to:

1.     Cease and refrain, for a period of one year from the date they begin compliance with such covenant not to compete, from directly or indirectly (such as through corporations or other entities owned or controlled by them), owning a legal or beneficial interest in, managing, operating or consulting with: (a) any business operating at the premises of Shop No. 1401 or within a radius of six (6) miles of the premises of Shop No. 1401 which business repairs or replaces exhaust system components, brake system components, or shocks and struts; and (b) any business operating within a radius of six (6) miles of any Meineke Shop existing as of the date Defendants' Franchise Agreement terminated which business repairs or replaces exhaust system components, brake system components, or shocks and struts.

2. Cease using and/or remove and/or have removed any names, marks, signs, forms, advertising, manuals, computer software, supplies, products, merchandise and all other things and materials of any kind which are identified or associated with the Meineke name, logo or marks, or which contain a name, logo or mark confusingly similar to the Meineke name, logo or marks, including, but not limited to the yellow awning at the Shop and the yellow and black signs that list Meineke's services.

3. Do everything necessary to release control of the Meineke telephone number 787/778-2700 associated with former Meineke Shop No. 1401 including signing all documents required by the applicable telephone company and paying any outstanding balances and/or fees required to transfer service.

4. Cease making any representation or statement that Defendants or the business located at Road #174, KM 2.2, Parque Industrial Minillas, Bayamon, Puerto Rico 00959 are in any way approved, endorsed or licensed by Meineke, or are identified with Meineke in any way.

5. Return to Meineke all signs, forms, manuals, supplies, computer software, products, merchandise and all other things and materials of any kind which are identified or associated in the mind of the consuming public with Meineke.

It is so ordered.

Signed: June 1, 2006

Graham C. Mullen
United States District Judge